210 N.J. Super. 32 (1986)
509 A.2d 200
ANGELO G. GIUDICE, JOSEPH J. PARCEL, ANTHONY SELLITTO, RUTH DOREMUS AND HANS BUGGE, PLAINTIFFS-APPELLANTS, CROSS-RESPONDENTS,
v.
DREW CHEMICAL CORP., ASHLAND TECHNOLOGY, INC., AND ASHLAND OIL, INC., DEFENDANTS-RESPONDENTS, CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 1986.
Decided April 24, 1986.
*33 Before Judges J.H. COLEMAN and LONG.
Richard C. Stein and Richard L. Steer, argued the cause for appellants, cross-respondents (Einhorn, Harris & Platt, attorneys; *34 Stein, Davidoff & Malito, Pro Hac Vice, of counsel; Richard C. Stein, Richard L. Steer, and Matthew Feignbaum, Pro Hac Vice, on the brief).
Frederick L. Whitmer, argued the cause for respondents, cross-appellants (Pitney, Hardin, Kipp & Szuch, attorneys; Frederick L. Whitmer, Kevin F. Kostyn, James H. Forte, on the brief).
The opinion of the court was delivered by COLEMAN, J.H., J.A.D.
Plaintiffs are former employees of defendant Drew Chemical Corp. and its parent companies. They were discharged from their employment in September  October 1981. At the time of discharge, plaintiffs held the following positions: Giudice, executive vice president of Drew, president of Drew Ameroid International and a member of the board of directors of Drew; Parcel, vice president of finance; Sellitto, comptroller; Doremus, office manager; and Bugge, European manager of Drew and managing director of two Drew subsidiaries. Plaintiffs instituted the present action on May 13, 1983, alleging wrongful discharge from their employment because they refused to "conceal and cover-up" culpable conduct on the part of J.J. Sweeney, the former president of Drew Chemical, and other corporate officers who had permitted Sweeney's misconduct to remain uncorrected. Plaintiffs also asserted that their discharges violated certain, unidentified "employment agreements" between Drew Chemical and plaintiffs. Plaintiffs further alleged that defendants engaged in various forms of tortious conduct against plaintiffs, including negligent or intentional infliction of emotional distress, defamation, and intentional infliction of injury to the prospective economic advantage of Giudice. Defendants denied the allegations made in the complaint. On October 12, 1985 an order was entered granting summary judgment to defendants, dismissing the complaint. Plaintiffs have appealed. We now reverse in part and affirm in part.
*35 It is clear from our careful study of the record that the parties were in serious disagreement over what caused plaintiffs to be fired. Plaintiffs contend, among other reasons, that they were fired in retaliation for not covering up Sweeney's dereliction of duty. They assert that a variety of express and implied agreements, including policy statements, manuals, memoranda and past practices, constituted contracts of employment which precluded defendants from firing them absent good cause. Defendants contend that plaintiffs were at-will employees and that, among other reasons, plaintiffs were fired because they fomented discord after Sweeney was chosen to be Drew Chemical's president in Giudice's stead, and Giudice was suspected of leaking confidential information to a competitor. They assert that the firing was privileged on grounds that no employment agreement existed which prohibited the firings, including confidentiality agreements that were signed by Giudice, Parcel, Sellitto and Bugge. In granting the motion for summary judgment, Judge D'Ambrosio reviewed documents submitted, heard oral argument and concluded that no written or implied contract of employment existed requiring cause for discharge.
After Judge D'Ambrosio's decision was rendered on March 4, 1985 and before final judgment was entered on October 12, 1985, our Supreme Court decided Woolley v. Hoffmann-La Roche, Inc., 99 N.J. 284 (1985). Woolley for the first time allows a contract of employment to be carved out of a company's personnel policy manual. Contrary to defendants' assertion, plaintiffs vaguely alleged in the pretrial memorandum that Drew Chemical's Corporate Policy & Procedures Manual and the operations manuals of Ashland Oil, Inc. and U.S. Filter Corporation created an implied contract of employment requiring good cause for termination. Even if the issue was not raised below, we are nonetheless required to apply Woolley. See Riggs v. Township of Long Branch, 101 N.J. 515, 521 (1986); Application of Ronson Corp., 164 N.J. Super. 68, 71 (App.Div. 1978).
*36 The summary judgment dismissing the complaint must be reversed in part. On the remand, the trial must be allowed to proceed because it is obvious that factual questions will persist concerning the meaning and intent of certain documents relevant to a decision under Woolley. If the fact finder determines that a contract of employment under Woolley does exist, on an issue as vital as job security, the trial judge must construe that contract "in accordance with the reasonable expectations of the employees." 99 N.J. at 297-298.
Plaintiffs also contend that summary judgment was inappropriate under Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58 (1980). We disagree. Based upon our careful study of the record, plaintiffs failed to identify "a specific expression of public policy" protecting them from at-will termination. Id. at 72. Private investigation of possible criminal activities of fellow employees does not implicate the same public policy consideration as if plaintiffs had been fired as the result of cooperating with law enforcement officials investigating possible criminal activities of fellow employees. Thomas v. Duralite Co., Inc., 524 F.2d 577 (3d Cir.1975), Popkin v. Bishop, 464 F.2d 714 (2nd Cir.1972), Tully v. Mott Supermarkets, Inc., 337 F. Supp. 834 (D.N.J. 1972) and Merrit v. Libby, McNeill & Libby, 510 F. Supp. 366 (S.D.N.Y. 1981) which were cited by plaintiffs do not support the proposition for which they were cited and do not require a different result.
In Thomas a former shareholder brought an action against a corporation and two of its officers to recover for alleged misrepresentations made in connection with the corporation's repurchase of his stock. The officers had allegedly misrepresented a turnaround in the corporation's financial position and had failed to disclose merger negotiations. The court did not address the issue of public policy; the suit merely involved a private shareholder's securities act fraud suit. Popkin involved a shareholder's derivative action which sought to enjoin a proposed corporate merger. Tully, a case which plaintiffs *37 fail to note was reversed and remanded at 540 F.2d 187 (3rd Cir.1976), involved a case in which one class of shareholders sued another class, alleging violations of securities fraud statutes. Merrit involved five consolidated shareholder actions in which plaintiff alleged that defendant corporations conspired to defraud plaintiff in connection with a tender offer. In none of these cases are termination of employment or public policy issues discussed.
Plaintiffs allege that cases in other jurisdictions which have adopted the public policy exception to the employment at-will rule support their position. In Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 427 A.2d 385, 387 (1980), the Connecticut Supreme Court cited cases of wrongful termination where employees exercised their right to (1) refuse to commit perjury, (2) file a workmen's compensation claim, and (3) engage in union activity. These results were supported by state statutes and constitutions which established the principle that public policy imposes limits on unbridled discretion to terminate the employment of an at-will employee. 427 A.2d at 387. Those are not the issues raised in the present case.
The central allegation in Sheets was that plaintiff was discharged because he called to his employer's attention repeated violations of a Connecticut law which prohibited, as a public health measure, the sale of mislabled food and which imposed criminal penalties upon anyone who violated the law. Plaintiff's position as quality control director and manager exposed him to the possibility of criminal prosecution under the statute. Id., 427 A.2d at 388. The court held "that an employee should not be put to an election whether to risk criminal sanction or to jeopardize his continued employment." Id., 427 A.2d at 389. Because the present plaintiffs were not discharged for refusing to commit criminal acts, Sheets is not relevant. In the same connection, see Alexander v. Kay Finlay Jewelers, Inc., 208 N.J. Super. 503 (App.Div. 1986); Kalman v. Grand Union Co., 183 N.J. Super. 153 (App.Div. 1982); Lally v. Copygraphics, 173 N.J. Super. 162 (App.Div. 1980), aff'd 85 N.J. 668 (1981).
*38 In Tameny v. Atlantic Richfield Co., 27 Cal.3d 167, 610 P.2d 1330, 164 Cal. Rptr. 839 (1980), plaintiff alleged that defendant employer had wrongfully discharged him because he refused to participate in an illegal scheme to fix retail gasoline prices. The Tameny court found that an employer's duty not to wrongfully terminate employment when an employee refuses to commit a criminal act is not contingent upon express or implied promises set forth in the employment contract, but is a duty imposed by law upon the employer in order to advance the public policies reflected in the state's penal statutes. 610 P.2d at 1335, 164 Cal. Rptr. at 844. As with Sheets, Tameny is not relevant because the present plaintiffs would not have faced criminal sanctions for not investigating Sweeney.
Plaintiffs' brief cites Monge v. Beebe Rubber Co., 114 N.H. 130, 316 A.2d 549 (1974), for the proposition: "A termination of an at-will employee which is motivated by bad faith or malice or based on retaliation, is not in the best interest of the economic system or the public good and constitutes a breach of the employment contract." Monge involved claims that plaintiff was harassed by her foreman because she refused to go out with him and that his hostility, condoned if not shared by defendant's personnel manager, ultimately resulted in her being fired. Id., 316 A.2d at 550. Monge is a sexual harassment case which is distinctly different from the present case. While the quoted language supports plaintiffs' position generally, it contributes nothing to the law in New Jersey because this conduct is prohibited by our anti-sex discrimination law. N.J.S.A. 10:5-12a. That statute embodies a clear public policy mandate. Pierce v. Ortho Pharmaceutical Corp., supra, 84 N.J. at 72. Consequently, summary judgment on the Pierce claims was proper.
We have carefully considered the remaining contentions raised by plaintiffs and find they are clearly without merit. R. 2:11-3(e)(1)(E). We add simply that an employee who has been wrongfully discharged within contemplation of Pierce or Woolley *39 may maintain a cause of action in contract or tort or both. In Pierce the Supreme Court stated:
An action in contract may be predicated on the breach of an implied provision that an employer will not discharge an employee for refusing to perform an act that violates a clear mandate of public policy. Cf. Vasquez v. Glassboro Service, Inc., 83 N.J. 86 (1980).
An action in tort may be based on the duty of an employer not to discharge an employee who refused to perform an act that is a violation of a clear mandate of public policy. In a tort action, a court can award punitive damages to deter improper conduct in an appropriate case. DiGiovanni v. Pessel, 55 N.J. 188, 190-191 (1970); Prosser, Torts § 2 at 9 (1971); 28 Vand.L.Rev., supra at 836. That remedy is not available under the law of contracts. See, e.g., Corbin, Contracts § 1077 at 367 (1951). Our holding should not be construed to preclude employees from alleging a breach of the express terms of an employment agreement. [Pierce v. Ortho Pharmaceutical Corp., supra, 84 N.J. at 72]
Because we have limited any possible recovery by plaintiffs to a possible Woolley contract, plaintiffs may maintain an action which sounds in tort only to the extent they can establish a breach of duty arising out of a Woolley contract of employment.
Defendants have cross appealed, contending that Giudice's claims should have been dismissed based upon the entire controversy doctrine. The underpinning for this contention is as follows. In October 1982 Giudice filed an action in the Supreme Court of New York against Drew Chemical, United States Filter Corp., Ashland Oil Corp. and J.J. Sweeney, former president of Drew Chemical. He essentially alleged that "defendants conspired and maliciously and wilfully participated in a plan, and course of action designed ... to defame ... plaintiff ... to destroy his income and livelihood ... and to remove the plaintiff as an officer and director of Drew and its subsidiaries." He sought monetary damages.
On December 6, 1982, Drew Chemical, U.S. Filter and Ashland Oil answered that complaint, denying the allegations. On March 23, 1983, defendants moved to dismiss the complaint. On April 5, 1983, the Supreme Court of New York dismissed Giudice's complaint for failure to state a cause of action.
*40 Giudice appealed and on May 11, 1983, submitted a Civil Appeal Pre-Argument Statement to the Supreme Court, Appellate Division. In answer to the question, "Whether there is Any Related Action or Proceeding Now Pending in Any Court of This or Any Other Jurisdiction....," Giudice responded that there was no such action but that he "anticipated that an action concerning some of the same facts will be commenced within a day or two ... in the Superior Court of New Jersey, County of Morris." The Appellate Division of the New York Supreme Court affirmed the dismissal.
On May 13, 1983 the present action was commenced in New Jersey by Giudice and others against the same defendants with the exception of U.S. Filter and J.J. Sweeney. In a motion dated June 21, 1983, defendants moved to dismiss the complaint of Giudice for failure to state a claim or for summary judgment based upon the assertion that his claim was barred by the "entire controversy doctrine." On July 29, 1983, Judge Arthur Minuskin, denied defendants' motion. In a letter opinion dated August 5, 1983 the judge noted that the affirmation of a partner of Giudice's New York attorney, indicated that the (New York) defamation claim and the (New Jersey) wrongful discharge claim were based upon distinct transactions. Judge Minuskin concluded that,
The defamation case resulted from defendant's publication of a memorandum dated September 4, 1981 which contained an allegedly false report that plaintiff had been removed as a director. The wrongful discharge suit arises out of defendant's alleged retaliation to plaintiff's refusal to cover-up corporate acts of mismanagement and waste. The latter suit is factually supported by conduct and occurrences other than publication of the September 24 memorandum. Therefore, trial of the wrongful discharge case is not likely to amount to a rehash of the evidence and testimony offered in the New York case or, in the apt phraseology of our Supreme Court, `merely one inning of the whole ball game.' There is, of course, the risk that a denial of defendant's motion would result in a certain amount of duplicitous litigation. However, the possibility of some overlap in the evidence and testimony produced at trial gives the court cause for less concern than does the possibility of obliterating a meritorious cause of action. Potential prejudice to the plaintiff clearly outweighs prejudice to the defendant who must, in any event, remain in this case to defend wrongful discharge claims made by other plaintiff employees. For all of these reasons, defendant's motion is denied.
*41 Defendant's motion for leave to appeal was denied on September 19, 1983. Thereafter, defendants sought a reconsideration of Judge Minuskin's order at the time Judge D'Ambrosio heard the motion for summary judgment on November 2, 1984 and March 4, 1985. Judge D'Ambrosio refused to reconsider Judge Minuskin's decision.
The entire controversy doctrine, see R. 4:27-1(b), as we recently observed is:
a preclusionary principle intended to prevent the fractionalization of litigation by requiring all claims between the same parties arising out of or relating to the same transactional circumstances to be joined in a single action. The effect of the doctrine is to preclude a party from withholding from the action for separate and later litigation a constituent component of the controversy even where that component is a separate and independently cognizable cause of action. [Citation omitted].
Brown v. Brown, 208 N.J. Super. 372 (App.Div. 1986). The doctrine is one of judicial fairness and should be invoked in that spirit. Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 343 (1984).
The point of the cross appeal is that Giudice unfairly withheld from the New York litigation the claims he asserts in the present litigation, making the New York law suit "merely one inning of the whole ball game." Wm. Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J. Super. 277, 294 (App.Div.), certif. den. 75 N.J. 528 (1977). Even though Giudice's claims for defamation in New York and wrongful discharge in the present case may be separate and independent causes of actions capable of separate adjudication, those are insufficient reasons to preclude operation of the doctrine. See Ibid; The Malaher Corp. v. First Jersey National Bank, 163 N.J. Super. 463, 497 (App.Div. 1978).
Based upon our study of the record, we are completely satisfied that Giudice's election to hold back from the New York litigation the claim of wrongful discharge must bar him from thereafter raising it in a subsequent proceeding. The defamation and wrongful discharge actions are closely related and are constituent components of the entire controversy. This *42 conclusion is inescapable in view of the fact that in New York and in New Jersey, Giudice alleged that defendants engaged in a course of conduct which deprived him of his job and means of earning a livelihood. Even if the defamation and wrongful termination claims were "distinct transactions" as Judge Minuskin concluded, that fact does not militate against application of the entire controversey doctrine. Additionally, the fact that New York might not recognize Woolley and Pierce types of wrongful discharge causes of action does not preclude the requirement that the entire controversy be determined in a single action which saves time and expense. When Giudice filed the New York action he contemplated that before or after final judgment in New York, separate litigation would be filed in New Jersey "in order to conclusively dispose of their respective bundles of rights and liabilities which derive from a single transaction or related series of transactions;" consequently, "the omitted component must be regarded as constituting an element of the minimum mandatory unit of litigation." Wm. Blanchard Co. v. Beach Concrete Co., Inc., supra, 150 N.J. Super. at 294. Therefore, we hold that Giudice who was in control of his litigation must suffer the preclusionary consequences of the entire controversy doctrine. That result must obtain notwithstanding the fact that the first litigation was instituted in New York rather than in New Jersey. See Applestein v. United Board & Carton Corp., 35 N.J. 343, 356-357 (1961).
The order of Judge Minuskin dated July 29, 1983 which denied defendants' motion to dismiss Giudice's complaint based upon the entire controversy doctrine is hereby reversed and his complaint is hereby dismissed. The summary judgment entered by Judge D'Ambrosio dismissing the other plaintiffs' complaint is reversed in part based upon Woolley. The matter is remanded to the Law Division for a trial on the issue of whether Parcel, Sellitto, Doremus and Bugge had contracts of employment under Woolley and if so, whether there was compliance with the contractual termination provisions, whether *43 good cause existed to permit termination and what, if any, damages should be awarded. See Woolley v. Hoffmann-La Roche, Inc., 101 N.J. 10-11 (1985). We do not retain jurisdiction.