**Moses RADWAN, Appellant,**

v.

**BEECHAM LABORATORIES, A DIVISION OF BEECHAM, INC.**

No. 87–5798.

United States Court of Appeals, Third Circuit.

Argued May 5, 1988.

Decided June 22, 1988.

Rehearing and Rehearing In Banc Denied July 27, 1988.

Richard L. Tice (argued), Robert W. Becker, Large, Scammell & Danziger, Flemington, N.J., for appellant.

S. Joseph Fortunato (argued), Pitney, Hardin, Kipp & Szuch, Morristown, N.J., for appellee.

Before HIGGINBOTHAM, STAPLETON and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

This matter is before the court on appeal from an order for summary judgment entered in the district court on October 23, 1987 in favor of defendant Beecham Laboratories, dismissing the complaint against it of plaintiff, Moses Radwan, its former employee, arising from the termination of his employment. In his three count complaint filed in the Superior Court of New Jersey Radwan alleged his discharge was for refusing to perform an illegal act and thus violated his employment contract (first count) and New Jersey public policy (second count). In addition, Radwan alleged that he was unlawfully terminated because of age (third count) but that claim was dismissed with prejudice by stipulation of the parties and therefore we make no further reference to it. Beecham removed the case to the district court on the basis of diversity of citizenship. In reviewing the grant of summary judgment, we apply the same test used by the district court and thus unless we find that no genuine issue as to any material fact remains for trial and Beecham was entitled to a summary judgment as a matter of law, we must reverse. *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir.1987); Fed. R.Civ.P. 56(c).

I

The basic circumstances of this case are not in dispute. On March 5, 1970, Radwan signed an application for employment with Beecham which provided:

I authorize investigation of all statements contained in this application. I understand that misrepresentation of facts called for is cause for dismissal. Further, I understand and agree that my employment is for no definite period and may, regardless of the date of payment

of my wages and salary, be terminated at any time without previous notice.

Radwan's application was approved and he started working with Beecham as a packaging manager in Piscataway, New Jersey, about one month later. At that time he was given a Beecham employees manual which included the following provision entitled "Dismissal":

Each employee has the responsibility of conducting himself properly while at work. Occasionally an employee fails to consider the interests of either the company or his fellow employees in matters which are sufficiently serious as to warrant dismissal for cause. Dismissal for cause may include, but is not limited to, any of the following violations:

1 Inefficiency, insubordination, or neglect of responsibility.

2 Frequent absence or tardiness or a combination of both.

3 Intoxication, drinking on the job, or conduct which is contrary to common decency.

4 Divulging confidential information pertaining to the company without authority from management.

5 Deliberate destruction or removal of property belonging to the company or to a fellow employee.

6 Dishonesty.

The manual made no provision for the procedures to be followed by the company when dismissing an employee for cause.

Radwan's initial performance with Beecham was apparently satisfactory as he was reassigned as materials manager in 1977 and as production manager in 1979. Radwan asserts that these new responsibilities were promotions. In early 1980 there was a strike at Beecham's plant in Piscataway. According to Radwan, during the strike Beecham's president, Fred Bledsoe, suggested that the company "set up" the chief shop steward of the union involved in the strike. Radwan asserts that following the strike he was advised by Vincent Bruett, a Beecham executive, that Bledsoe wanted something planted on the steward so he could be fired. Radwan asserts that he refused to go along with this because it

was illegal and the steward was protected by law in his activities. While Beecham denies that Bruett made the remark attributed to him and indicates that Bledsoe spoke in jest, for purposes of this appeal we must accept the deposition testimony that the incidents occurred.

In October 1983 Ernest W. Cornett, a vice-president of Beecham for manufacturing, recommended that Radwan be terminated because in Cornett's view Radwan's management approach was adversarial and confrontational and he did not accept responsibility for shortcomings at the Piscataway facility. Other corporate officers agreed with the recommendation. Radwan, however, was not immediately terminated. Rather, Beecham appointed him manager of administrative affairs and told him to look for other work. During 1984 Radwan continued his employment with Beecham but in January 1985 he was told that January 31, 1985 would be his last day of work, though he would continue receiving salary and benefits until July 31, 1985. The parties adhered to these dates and thus Radwan was paid for six months after his services ended. He subsequently brought this action.

Radwan's complaint was based on New Jersey law as set forth by its Supreme Court in *Woolley v. Hoffman–LaRoche, Inc.*, 99 N.J. 284, 491 A.2d 1257 (1985), *modified*, 101 N.J. 10, 499 A.2d 515 (1985), and *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 417 A.2d 505 (1980). In *Woolley* the court held that absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even though the employment is for an indefinite term and is otherwise terminable at will. 99 N.J. at 285, 491 A.2d at 1258. *See* Comment, *Limiting the Employment-at-Will Rule: Enforcing Policy Manual Promises Through Unilateral Contract Analysis*, 16 Seton Hall L.Rev. 465 (1986). In *Pierce* the court held that an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public poli-

cy, the source of which may include legislation, administrative rules, regulations or decisions, judicial decisions and, in some instances, professional codes of ethics. Thus an employer may not discharge an employee at will on the ground that the employee declines to perform an act requiring a violation of a clear mandate of public policy. 84 N.J. at 71, 417 A.2d at 512.

After discovery Beecham moved for summary judgment. The first count of the complaint based on *Woolley* was dismissed by the district judge on the ground that it would be unfair to apply that case retroactively. He cited *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), generally dealing with retroactivity, and *Bimbo v. Burdette Tomlin Memorial Hospital,* 644 F.Supp. 1033 (D.N.J. 1986), specifically rejecting retroactive application of *Woolley,* as supporting his holding. The second count of the complaint predicated on *Pierce* was dismissed as the judge could conceive of no clearly enunciated state policy infringed by the discharge. While the judge acknowledged that the allegations made by Radwan could have raised an issue for the National Labor Relations Board, the National Labor Relations Act was not a sufficient source of public policy on which Radwan could predicate his action as it set forth no clearly enunciated *state* policy. On October 23, 1987 the judge entered an order consistent with his oral decision and this appeal followed.

## II

█ We will affirm the dismissal of the first count without considering the retroactivity of *Woolley.*[1] Here, unlike in *Woolley,* the question of the employee's tenure was specifically dealt with in writing when he was hired, for Radwan in his employment application agreed that he could be discharged at any time without previous notice. *See* 99 N.J. at 285, 491 A.2d 1258. Further, nothing in Radwan's application suggested that Beecham's right to dis-

charge him was dependent upon his conduct or job performance. While this application was not part of the employees manual, we do not understand *Woolley* to require that disclaimers of an intent to bind an employer not to discharge an employee must be in the employees manual and not in an individual agreement. Thus, in *Ware v. Prudential Insurance Co.,* 220 N.J.Super. 135, 143, 531 A.2d 757, 761 (App.Div. 1987), the court indicated:

> Since an employer may avoid any legally binding effect being given to personnel policies set forth in a policy manual by a unilateral statement in the manual, it follows *a fortiori* that this effect may be avoided by the execution of a written employment contract by which the employee expressly agrees to an at will employment status. *See Batchelor v. Sears, Roebuck & Co.,* 574 *F.Supp.* 1480 (E.D.Mich.1983); *Novosel v. Sears, Roebuck & Co.,* 495 *F.Supp.* 344 (E.D.Mich. 1980). Here, plaintiff expressly agreed that his employment agreement could be 'terminated by either party at any time.' Furthermore, plaintiff may not avoid the explicit terms of his written employment contract by asserting that oral assurances of job security, inconsistent with the contract, were given to him when it was executed.

In view of Radwan's acceptance of a term of employment providing without qualification that he could be terminated at any time without previous notice, he could hardly have any reasonable expectation that Beecham's manual granted him the right only to be discharged for cause. *See also Gianaculas v. Trans World Airlines, Inc.,* 761 F.2d 1391, 1394 (9th Cir.1985); *Leahy v. Federal Express Corp.,* 609 F.Supp. 668, 672 (E.D.N.Y.1985).

We recognize that this action was decided on a motion for summary judgment. We also realize that the Appellate Division of the Superior Court of New Jersey in *Giudice v. Drew Chemical Corp.,* 210 N.J. Super. 32, 35, 509 A.2d 200, 202 (1986),

---

1. We note that in *Cole v. Carteret Savings Bank,* 224 N.J.Super. 446, 540 A.2d 923 (1988), a judge of the Law Division of the Superior Court of

New Jersey disagreed with *Bimbo* and held that *Woolley* is retroactive.

*certif. granted and denied,* 104 N.J. 465, 517 A.2d 448, 449 (1986), in an action in which the plaintiffs claimed employment rights on the basis of the defendants' employees manuals, held that on the record summary judgment was inappropriate because "factual questions will persist concerning the meaning and intent of certain documents relevant to a decision under *Woolley.*" It does not follow, however, that *Giudice* suggests that in New Jersey *Woolley* issues can never be decided as a matter of law for in its later decision in *Ware v. Prudential Ins. Co.,* 220 N.J.Super. at 135, 531 A.2d at 757, the Appellate Division held that notwithstanding a jury verdict in favor of an employee in a *Woolley* action, the court erred as a matter of law in failing to enter a judgment for the employer on its motion at the close of plaintiff's case. *See also Woolley,* 99 N.J. at 305–309, 491 A.2d at 1269–70. Here there can be no doubt as to the meaning of the agreement of the parties when Radwan was employed and thus the district court properly granted the summary judgment.

While we principally base our decision on the agreement as set forth in the employment application, we also point out that even under the manual it is doubtful that Radwan may assert *Woolley* rights. The manual, unlike that of the employer in *Woolley,* contained no "fairly detailed procedure to be used before an employee may be fired for cause." *See* 99 N.J. at 287 n. 2, 491 A.2d at 1259 n. 2. Further, Beecham's manual, unlike that in *Woolley,* does not include a provision requiring it to attempt to remedy any situation related to the employee's performance. 99 N.J. at 311, 491 A.2d at 1272. Finally, even the fairly detailed enumeration of grounds for dismissal with cause is not exclusive.

### III

■ We cannot, however, agree with the district judge with respect to his disposition of the *Pierce* issue and his dismissal of the second count of the complaint. Preliminarily in this regard we predict that the Supreme Court of New Jersey would hold that an employee could not be discharged for declining to perform an act requiring a violation of a clear mandate of public policy though established by federal rather than state law. We are rather confident in this conclusion for that court has indicated that in at least some circumstances a clear mandate of public policy may be established by a professional code of ethics. *Pierce,* 99 N.J. at 71, 417 A.2d at 512. *See also Kalman v. Grand Union Co.,* 183 N.J.Super. 153, 157–59, 443 A.2d 728, 730–31 (App.Div.1982). Surely federal law cannot be a lesser source of public policy than a professional code of ethics. *See also Zamboni v. Stamler,* 847 F.2d 73 (3d Cir.1988).

Clearly, Beecham would have violated federal law if it planted something on the steward and then discharged him because it found what it planted as the stated basis for the discharge would have been a mere pretext to conceal the fact that the steward was actually discharged because of his union activities. As noted by the Supreme Court in *N.L.R.B. v. Transportation Management Corp.,* 462 U.S. 393, 398, 103 S.Ct. 2469, 2472, 76 L.Ed.2d 667 (1983), under the National Labor Relations Act "it is undisputed that if the employer fires an employee for having engaged in union activities and has no other basis for the discharge, or if the reasons that he proffers are pretextual, the employer commits an unfair labor practice." Thus if we accept Radwan's contention that he was discharged for refusing to plant something on the steward we would be concluding that he was discharged for refusing to participate in a violation of public policy as set forth in the National Labor Relations Act. 29 U.S.C. §§ 158(a)(1)(3). *See also Stepanischen v. Merchants Dispatch Trans. Corp.,* 722 F.2d 922, 932 (1st Cir.1983).

■ We also hold that planting an object on a union steward so he could be terminated would violate New Jersey public policy, for the state constitution guarantees employees in private employment the right to organize and bargain collectively. N.J. Const. art. 1, § 19. While the Supreme Court of New Jersey acknowledges that state power in labor matters has been significantly preempted by federal law, *see*

**152**

*Chamber of Commerce of the U.S. v. State of New Jersey*, 89 N.J. 131, 445 A.2d 353 (1982), we do not consider that this recognition negates from the force of the state constitution as a prime expression of public policy. Thus, we conclude that an employee who sets up a union official for a discharge to mask the employer's actual motive for terminating the employee for union activity violates New Jersey public policy. Accordingly, even an at-will employee cannot be discharged for refusing to do so.

Though we disagree with the district judge's holding that the alleged reason for Radwan's discharge did not violate public policy within the contemplation of *Pierce*, there remains the question of whether Radwan was discharged for the reason he advances. Clearly, his case on this point is not particularly strong. He admits that he has discovered no evidence directly linking his discharge to the alleged 1980 events. Thus, his case is partially predicated on inferences. Further, Beecham has presented evidence that Cornett was unaware of the incident regarding the steward when he made his recommendation to terminate Radwan. We also observe that about three years elapsed between Radwan's alleged refusal to set up the steward and the decision to discharge him. A jury might infer from this delay that the events were unrelated. Finally, Beecham's rather benevolent procedure in discharging Radwan arguably is indicative of a motive other than retaliation for Radwan's conduct in 1980.

Nevertheless, we are satisfied that a jury could infer that from the time of the strike Radwan was doomed at Beecham and that his discharge was a direct consequence of his refusal to plant something on the steward. After all a knowledgeable employer might mask its reason for discharging an employee by delaying its action for a protracted period after a dispute thus showing more sophistication than the employer in *Kalman v. Grand Union*, 183 N.J.Super. at 153, 443 A.2d at 728, which discharged an employee one day after he refused to permit his employer to violate state regulations. Thus this is a case in which differ-

ent inferences might be drawn from the same facts. Overall, we are satisfied that material facts remain in question with respect to the *Pierce* allegations in the second count of the complaint.[2]

The order, filed October 23, 1987, will be affirmed insofar as it entered judgment for the defendant on the first count of the complaint, but will be reversed insofar as it entered a like judgment on the second count, and the matter will be remanded to the district court for further proceedings consistent with this opinion.

---

**2.** Judge Higginbotham joins the majority on part III only.