**ELECTRO-MINIATURES CORP., Appellant,**

v.

**WENDON COMPANY, INC. and Westinghouse Electric Corporation, Inc., Westinghouse Electric Corp., Inc.**

No. 89-5048.

United States Court of Appeals, Third Circuit.

Argued Sept. 27, 1989.

Decided Nov. 14, 1989.

---

Mary M. Rogers (argued), Petrikin, Wellman, Damico, Carney & Brown, Media, Pa., for appellant.

William J. Speranza (argued), St. Onge, Steward, Johnston & Reens, Stamford, Conn., for Wendon Co., Inc.

Before HIGGINBOTHAM, STAPLETON and SCIRICA, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, JR., Circuit Judge.

Electro–Miniatures Corporation ("EMC") appeals from a January 4, 1989 order of the United States District Court for the District of New Jersey granting summary judgment in favor of appellee Wendon Company, Inc. ("Wendon"). Because we conclude that the district court erred in applying New Jersey's "entire controversy" doctrine, we will reverse and remand for further proceedings.

### I.

EMC is a Delaware corporation with its principal place of business in New Jersey.

Wendon is a Connecticut corporation and competitor of EMC. The parties are engaged in the business of manufacturing and selling printed slip ring assemblies.[1] For over a decade, EMC and Wendon have been intermittently involved in litigation concerning this product.

#### A. Initial Action

In April 1978, EMC filed a diversity suit in the United States District Court for the District of Connecticut ("initial action") against Wendon and Fred Eccles (a former EMC employee who had been hired by Wendon) alleging that the defendants had misappropriated EMC's proprietary information relating to slip ring assemblies. After a jury trial, the court entered judgment for EMC upon a finding that Wendon had wrongfully acquired EMC's trade secrets. EMC was awarded $375,000 in damages.

After the trial, EMC filed a motion to alter or amend the judgment to provide for a permanent injunction barring Wendon from manufacturing or selling the slip ring assemblies. The court appointed a special master to determine the existence, scope, and duration of EMC's trade secret. However, following negotiations between the parties, and before the special master had issued his opinion, counsel for EMC wrote a letter to the court requesting that its motion be withdrawn "with prejudice." On January 23, 1985, the court endorsed the letter as follows: "Construing this letter as a stipulation, stipulation APPROVED and SO ORDERED." Appendix ("App.") at 79.

On Wendon's appeal of the initial action, the district court's judgment was affirmed by the United States Court of Appeals for the Second Circuit. *Electro–Miniatures Corp. v. Wendon Co., Inc.*, 771 F.2d 23 (2d Cir.1985).

#### B. Present Action

EMC asserts that after paying damages pursuant to the judgment in the Connecti-

---

**1.** Slip ring assemblies are electro-mechanical devices that allow electricity to pass from fixed to rotating structures. They are used primarily by the military in devices such as submarine periscopes, rotating antennas, and tank turrets. See *Electro–Miniatures Corp. v. Wendon Co., Inc.*, 771 F.2d 23, 24 (2d Cir.1985)

cut action, Wendon has continued to manufacture and sell slip ring assemblies in competition with EMC. EMC commenced this action ("New Jersey action" or "present action") against Wendon and Westinghouse Electric Corporation[2] in New Jersey Superior Court on December 5, 1985. The action was subsequently removed to the United States District Court for the District of New Jersey. In its Amended Complaint, EMC asserts that Wendon continued to misappropriate its trade secrets after the judgment in the initial action. It seeks damages, an accounting, and an injunction restraining Wendon from "designing, manufacturing, selling, repairing, and refurbishing printed circuit board slip ring assemblies, or any component part or sub-assembly thereof." Supplemental Appendix ("Supp.App.") at 5.

C. Second Connecticut Action

Following the institution of the New Jersey action, Wendon commenced ancillary proceedings in the district court in Connecticut ("second Connecticut action"[3]) in an attempt to prevent EMC from pursuing the present litigation.[4] In its motion papers, Wendon requested that the district court enjoin EMC "from continuing the New Jersey litigation and from commencing, or threatening to commence, any other action or proceeding against Wendon, its customers or its potential customers based upon the claims and issues already fully determined in the Connecticut action." Second Supplemental Appendix ("Second Supp. App.") at 17.

In August 1986, in a most thoughtful opinion by Judge Eginton, the district court in Connecticut ruled that EMC's voluntary withdrawal of its injunctive claims in the initial action did not have res judicata effect in a subsequent lawsuit alleging that Wendon was continuing to misappropriate

EMC's trade secrets. The court held that the judgment in the initial action

has res judicata effect only with respect to those matters which were actually litigated and determined in this action; that EMC possessed a trade secret, that Wendon wrongfully acquired that trade secret, and that the amount of damages for that particular tort was $375,000. The initial judgment is not res judicata as to the matters which might have been, but were not determined at that time, namely, those issues encompassed in [EMC's] motion to alter or amend the judgment which was withdrawn with prejudice; whether a trade secret existed subsequent to the second trial, and if so, what was its scope.

Supp.App. at 22. The court found that the withdrawal "with prejudice" of EMC's motion for injunctive relief affected only "the cause of action in which the motion was filed. Accordingly, EMC has the right to litigate in New Jersey to determine whether or not there was a second wrongful taking, and if so, what the damages for that tort would be." *Id.* The Second Circuit affirmed the district court's decision, essentially adopting the lower court's rationale. Supp.App. at 7–12.

D. District Court Decision in New Jersey Action

After having lost in the second Connecticut action, Wendon moved for summary judgment in the present action on the grounds that New Jersey's "entire controversy" doctrine bars this lawsuit. In its response, EMC argued that Wendon's motion sought to apply the entire controversy doctrine "on the same set of facts upon which it has already been determined [in the second Connecticut action] that Res Judicata or collateral estoppel do not apply." App. at 91.[5]

---

2. Westinghouse has been dismissed from the present action by stipulation.

3. We designate the renewed proceedings in the Connecticut district court as the "second Connecticut action" solely as a matter of convenience. The later proceedings in Connecticut were actually docketed under the same civil action number as the initial lawsuit.

4. The court below stayed the present proceedings pending determination of the second Connecticut action.

5. EMC did not argue specifically to the district court that Wendon's entire controversy defense was barred by the judgment in the second Connecticut action. However, it did state rather emphatically in its response to Wendon's sum-

On January 4, 1989, the district court granted Wendon's motion and dismissed EMC's amended complaint. The court held that the entire controversy doctrine was applicable, reasoning that in the initial action

> not only *could* EMC have asserted a claim for a permanent injunction precluding Wendon from further use of the trade secrets, it *did* assert such a claim and then voluntarily abandoned it. Plaintiff does not assert that a new misappropriation of secret information occurred, but rather that there was a *continued use* of the information which was the subject of the Connecticut action. The transcripts of the proceedings before Judge Eginton clearly indicate that plaintiff was aware of the continued use by Wendon of its drawings, yet EMC withdrew its request for a permanent injunction. The court finds that the prior Connecticut action and the present action are parts of *one* controversy between the parties, with that controversy involving the misappropriation of secret drawings and use of those drawings in competition with plaintiff.

App. at 107–08 (footnote omitted, emphasis in original).

EMC now appeals from the district court's judgment.

## II.

The sole issue before us is whether the district court erred in determining that EMC is now barred from challenging Wendon's alleged continued misappropriation of EMC's trade secrets. Because we conclude that the district court misapplied the standards governing the entire controversy and issue preclusion doctrines, we will reverse and remand for further proceedings.

Before discussing this case, it will be useful to review the standards governing the issue preclusion and New Jersey's broader entire controversy doctrine.

### A. Issue Preclusion

The doctrines of res judicata and collateral estoppel, now respectively termed claim preclusion and issue preclusion, "shar[e] the common goals of judicial economy, predictability, and freedom from harassment...." *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir.1988). Generally speaking, the principle of claim preclusion prevents a party from relitigating a claim that was the subject of a judgment in a prior action between the same parties. *See Davis v. United States Steel Supply, Division of United States Steel Corp.*, 688 F.2d 166 (3d Cir.1982), *cert. denied*, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983). The related doctrine of issue preclusion, "precludes the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted." *Melikian v. Corradetti*, 791 F.2d 274, 277 (3d Cir.1986); *see also Gregory*, 843 F.2d at 115–16, 121; *New Jersey—Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Board of Higher Education*, 654 F.2d 868, 876 (3d Cir.1981). As stated in the Restatement (2d) of Judgments § 27 (1982):

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

### B. Entire Controversy Doctrine

New Jersey's entire controversy doctrine reflects the state's "broad policy against claim-splitting"—reaching "more broadly than the 'same cause of action' requirement of the traditional res judicata doctrine." *Melikian*, 791 F.2d at 279. As the court explained in *Malaker Corp. Stockholders Protective Committee v. First Jersey National Bank*, 163 N.J.Super. 463, 496, 395 A.2d 222, 238 (App.Div.1978), *cert.*

---

mary judgment motion that the decisions of the Connecticut district court and the Second Circuit should be given preclusive effect. App. at 89, 95–97. Because New Jersey's entire contro-versy doctrine is inextricably related to the general principle of res judicata, we conclude that EMC preserved the entire controversy issue for appellate review.

*denied,* 79 N.J. 488, 401 A.2d 243 (1979), under this doctrine, "the 'entire controversy', rather than its constituent causes of action, is the unit of litigation and joinder of all such causes of action is compulsory upon penalty of forfeiture." Furthermore, the rule "applies both to subsequent actions asserting different legal theories and those requesting alternative relief." *Printing Mart–Morristown, Inc. v. Rosenthal,* 650 F.Supp. 1444, 1447 (D.N.J.1987), *citing Melikian,* 791 F.2d at 279; *see also O'Shea v. Amoco Oil Co.,* 886 F.2d 584 (3d Cir.1989); Comment, *The Entire Controversy Doctrine: A Novel Approach to Judicial Efficiency,* 12 Seton Hall L.Rev. 260 (1982).

In applying this doctrine, the New Jersey courts make an evaluation of

each potential component of a particular controversy to determine the likely consequences of the omission of that component from the action and its reservation for litigation another day. If those consequences are likely to mean that the litigants in the action as framed will, after final judgment therein is entered, be likely to engage in additional litigation in order to conclusively dispose of their respective bundles of rights and liabilities which derive from a single transaction or related series of transactions, then the omitted component must be regarded as constituting an element of the minimum mandatory unit of litigation. That result must obtain whether or not that component constitutes either an independent cause of action by technical definition or an independent claim which, in the abstract, is separately adjudicable.

*William Blanchard Co. v. Beach Concrete Co., Inc.,* 150 N.J.Super. 277, 293–94, 375 A.2d 675, 683–84 (App.Div.), *cert. denied,* 75 N.J. 528, 384 A.2d 507 (1977). The point of the doctrine is that "a component of the controversy may not be unfairly withheld, and a withholding is by definition unfair if

its effect is to render the pending litigation merely one inning of the whole ball game." 150 N.J.Super. at 294, 375 A.2d at 684.

C. Discussion

Two conclusions—the first explicit, and relatively unimportant; the second implicit, and critical—underlie the district court's ruling. First, the district court held, and the parties now assume, that New Jersey's entire controversy doctrine, and not the more limited claim and issue preclusion principles applied in most other jurisdictions, determines the collateral effect in New Jersey of a prior out-of-state judgment. Although, as the district court noted, there is some support for that position in at least one Superior Court decision, *Giudice v. Drew Chemical Corp.,* 210 N.J. Super. 32, 41, 509 A.2d 200, 205 (App.Div.), *cert. denied,* 104 N.J. 465, 517 A.2d 449 (1986) (entire controversy doctrine bars wrongful discharge claim because of failure to assert claim in prior New York defamation action), we note that the adoption of such an across-the-board rule might have unintended and untoward consequences.[6] However, because of the error in the court's second, implicit conclusion, we need not reach this issue. As noted *infra,* both the entire controversy and the traditional issue preclusion doctrines require reversal of the district court's judgment. Both dictate that *Wendon,* not EMC, is now barred from litigating the issue of the preclusive effect of the initial action.

In our view, the lower court erroneously assumed that the decisions of the district court and the Court of Appeals in the second Connecticut action on the issues of claim and issue preclusion were not themselves entitled to preclusive effect in the present proceeding. The district court's error is certainly understandable, as both parties have made the same assumption in their briefs before this court. However,

---

**6.** We note at least the theoretical possibility that such a holding might compel careful litigators in other jurisdictions to raise all related claims and issues and seek all available remedies in a single proceeding, because of the possibility that a subsequent claim might arise in New Jersey.

In this way, New Jersey would be imposing on litigants and courts in other states its policy choice to encourage parties to litigate all claims, defenses, issues, and remedies related to a particular transaction.

although circumstances in which a party is estopped from raising the issues of claim or issue preclusion are perhaps unusual, that situation presents itself here.

The issue of the preclusive effect of the judgment in the initial action was fully litigated in the second Connecticut action. Indeed, that issue was the sole focus of those renewed proceedings. The decisions of both courts squarely met and decided that issue adversely to Wendon. Both courts held that the stipulated withdrawal "with prejudice" of EMC's motion for injunctive relief in the initial action does not bar the present challenge to Wendon's alleged continued misappropriation of EMC's trade secret. Wendon is thus now precluded from relitigating the issue in the present action. New Jersey's res judicata and entire controversy principles clearly prohibit a party from raising issues that were litigated and determined in a prior judgment, *Culver v. Insurance Co. of North America*, 115 N.J. 451, 463, 559 A.2d 400, 406 (1989), and the issue preclusion doctrine similarly "precludes relitigation of an issue that has been put in issue and directly determined" in a prior action. *Melikian*, 791 F.2d at 277.

At oral argument, and again in a post-argument memorandum,[7] Wendon asserted that the rulings in the second Connecticut action are irrelevant to the present proceeding. Wendon contends that it was seeking in the ancillary proceeding to bar EMC from bringing actions in *all* jurisdictions, not just New Jersey. Thus, according to appellee, "[t]he mere fact that the law of New Jersey offered Wendon a separate independent basis (the 'entire controversy doctrine') for fending off EMC's specific New Jersey action was of no relevance to what Wendon was seeking in the ancillary proceeding." Appellee's Memorandum at 3.

We are unpersuaded by this contention. It is true that Wendon sought in the ancillary proceeding to enjoin EMC from prosecuting any lawsuits related to the subject matter of the initial action. Second Supp. App. at 3, 17. However, it is equally true that Wendon was prompted to institute that proceeding by EMC's commencement of the New Jersey litigation, and that it sought an order specifically barring this action. *Id.* at 4, 17. It can thus scarcely be contended that New Jersey's res judicata principles, including the entire controversy doctrine, were "of no relevance" to the second Connecticut action. If application of the entire controversy doctrine would have provided Wendon its desired relief, i.e., termination of the New Jersey action, then Wendon was compelled—under traditional issue preclusion principles as well as under the entire controversy doctrine itself—to assert that doctrine in the ancillary proceeding. Its failure to do so bars it from raising that issue now.

### III.

For the foregoing reasons, the judgment of the district court will be reversed and the matter will be remanded for further proceedings consistent with this opinion.[8]

---

7. In order to determine the issues raised in the second Connecticut action, we directed the parties to file a supplemental appendix containing copies of the parties' relevant filings in the district court and the Court of Appeals. We further directed the parties to file memoranda citing any references in those filings to New Jersey's collateral effect principles.

In its memorandum, Wendon stated that it "did not predicate its request for relief [in the second Connecticut action] upon the applicability of New Jersey's 'entire controversy doctrine',

and made no specific mention of that doctrine in any of its moving papers or briefs." Appellee's Memorandum at 2.

8. Because of its ruling on the entire controversy doctrine, the district court considered no evidence, and made no findings, concerning the existence, nature, and scope of EMC's trade secrets at the time of Wendon's alleged misappropriation. Because this appeal does not involve these issues, we also express no view on the merits of EMC's claim.