262 N.J. Super. 178 (1992)
620 A.2d 456
MORTGAGELINQ CORPORATION AND FEDERAL HOME LOAN MORTGAGE CORPORATION, PLAINTIFFS,
v.
COMMONWEALTH LAND TITLE INSURANCE COMPANY, EDWARD B. CAVALLARO, SR., CONTINENTAL TITLE INSURANCE COMPANY, ELIZABETH A. KEHOE, LAWYER'S TITLE INSURANCE CORPORATION, MARKLAND TITLE SERVICES, INC., AND ROBERTA A. RANKIN, DEFENDANTS.
Superior Court of New Jersey, Law Division Camden County.
Decided June 11, 1992.
*180 J. Philip Kirchner for plaintiff Mortgagelinq Corporation (Flaster, Greenberg, Mann & Wallenstein, attorneys; Mr. Kirchner of counsel and on the brief).
Richard O'Halloran for plaintiff Federal Home Loan Mortgage Association (Baldwin, Renner, Bragg & Adler, P.C., attorneys; Mr. O'Halloran of counsel and on the brief).
*181 Marc Rasponti, Pro Hac Vice, for defendant Elizabeth A. Kehoe (Miller, Alfano & Rasponti, attorneys; Ann Krasnowiecki on the brief).
Maureen Binetti for defendant Lawyer's Title Insurance Company (Wilentz, Goldman & Spitzer, attorneys; Ms. Binetti of counsel; Robert Mahoney and Edward D. Benattar on the brief.)
Steven Janove for defendant Continental Title Insurance Company (Duane, Morris & Heckscher, attorneys; Mr. Janove of counsel and on the brief).
WEINBERG, J.S.C.

I.
The facts, and all inferences drawn therefrom, viewed in the light most favorable to plaintiffs, are as follows. Plaintiffs claim that they are the victims of a fraudulent scheme involving twenty-four properties and numerous parties. In each case, the parcel of land was conveyed twice. In the first transaction, an entity controlled by one of the perpetrators purchased the property for at or near market value. The buyer then resold the property to another perpetrator. The purchase price in this second transaction was from two to four times greater than the price paid in the first.
Plaintiffs claim that the second purchaser in each case then submitted a false and fraudulent mortgage loan application to plaintiff Mortgagelinq. In reliance upon those applications, Mortgagelinq approved loans for 70% of the second purchase price and advanced funds accordingly. Also in each case, one of the title company defendants provided title insurance in connection with the property transfer, examined the title to the property, submitted a title report, and, through their settlement clerks, conducted closings in each of the 24 transaction pairs. Plaintiffs assert that in each case, both the first and second transactions occurred at the same time and place, and that in *182 several cases the second transaction was actually closed out of order, before the first. In virtually every instance, plaintiffs claim, the purchaser in the second transaction transferred the property back to the seller in the second transaction for one dollar.
Each of the 24 mortgages was sold by Mortgagelinq to the Federal Home Loan Mortgage Corporation ("Freddie Mac").

II.
Plaintiffs filed suit in the United States District Court for the Eastern District of Pennsylvania ("Federal Court") on or about March 13, 1991, asserting claims based upon negligence, breach of contract, breach of fiduciary duty, fraud and violations of the United States Racketeer Influenced and Corrupt Organizations Statute, 18 U.S.C.A. s. 1962 et seq. Plaintiffs amended the complaint on or about April 24, 1991 to name additional defendants but then removed references to the defendants in the New Jersey action. The federal action is, at this time, scheduled for trial some time in July.
On or about February 12, 1992, plaintiffs filed suit in the Superior Court of New Jersey. Plaintiffs named the movants and other defendants, claiming violations of the New Jersey Racketeering and Corrupt Organizations statute, N.J.S.A. 2C:41-1 et seq., misrepresentation, fraud, negligence, negligent supervision, wrongful notary services, breach of fiduciary duty, breach of contract, bad faith, and other claims. Pursuant to New Jersey Court Rule 4:5-1, plaintiffs certified under oath that the "matter in controversy is not the subject of any other pending action in any other court or of a pending arbitration proceeding". At that time, the federal action was pending in Pennsylvania.
Subsequent to the New Jersey filing, several defendants in the federal action moved to compel joinder of additional parties or, in the alternative, for leave to implead additional defendants, seeking to bring the movants and the other New Jersey *183 defendants into the federal case. Plaintiffs, for reasons that are still disputed and not material here, vigorously opposed that joinder motion. The motion was denied by the Hon. Norma Shapiro by an order dated April 15, 1992. The denial was based at least in part on the fact that the time period for joinder under F.R.Civ.P. 22 had expired and that the court had previously stated that it intended to follow the rule's provisions literally.[1]
This Court is satisfied that plaintiffs knew of their causes of action against the moving parties at least as early as the filing date of the federal action and certainly when they amended that complaint. In dispute still, is the question of whether the plaintiffs opposed the joinder motion because settlement talks were in progress or because Mortgagelinq's trial counsel in Pennsylvania had previously represented one of the movants. That question, however, is not material for purposes of resolving the instant motions. The court is also satisfied that the subject matter is identical in both suits and that plaintiffs affirmatively chose to bifurcate from the federal action trial of the causes against the New Jersey defendants despite this fact.
Defendants Lawyers' Title Insurance Corporation, Continental Title Insurance Company and Elizabeth Kehoe have all moved the court to dismiss plaintiffs' complaints in their entirety for violation of the entire controversy doctrine ("doctrine"). The facts and legal arguments cited by each of the movants are identical. The court will, therefore, discuss the motions as if they were one and the same.[2]

*184 III.

A.
Since its inclusion in the 1947 New Jersey Constitution,[3] the entire controversy doctrine has evolved into the rule for the inclusion of all claims, causes and defenses relating to a controversy between parties engaged in litigation. Cogdell v. Hospital Center at Orange, 116 N.J. 7 at 15-16, 560 A.2d 1169 (1989). The Cogdell decision extended the doctrine to include claims against non-parties, where such non-parties have a material interest in the controversy. Id. at 26, 560 A.2d 1169. The Cogdell Court recognized the commonality of purpose between the claims joinder rule, Rule 4:27-1, and the party joinder rule, Rule 4:28-1. Id. at 17, 560 A.2d 1169. In deciding to so extend the doctrine's ambit, the court discussed at length the purposes of the joinder rules and the doctrine, namely, to avoid waste of judicial resources, to provide for the finality of judgments and prevent prejudice to the parties. Id. at 14-18, 560 A.2d 1169. The Court thus recognized the nearly identical philosophies underlying the parallel rules in deciding to join them under the doctrine. Id. at 19-21, 560 A.2d 1169.
After the Cogdell decision, the Rules of Court were amended to include Rule 4:30A, codifying and setting forth the doctrine as a substantive rule. This rule provides:
Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine.
R. 4:30A. The comments to that rule explain that the rule "... does not define the doctrine", noting that such definition was "... best left to case law." The comments went on to say, however, that the purpose of the rule was to caution the bar as to the potential for claim preclusion for violating the doctrine.
*185 In making its ruling, the Cogdell Court expressed disapproval of those decisions which, prior to Cogdell, elected not to so extend the doctrine when faced with the same facts. Id. at 27, 560 A.2d 1169. One of those decisions specifically mentioned was Tall Timbers Property Owners Ass'n v. Tall Timbers, Inc., 217 N.J. Super. 119, 524 A.2d 1315 (App.Div. 1987), also referenced by the parties in this case. Though Tall Timbers is no longer valid law, its discussion of the doctrine and Rule 4:5-1 bears mention here.
Although the court in Tall Timbers specifically declined to do what Cogdell later did, its observations regarding Rule 4:5-1 and that rule's importance were sound. Rule 4:5-1(b)(2), Notice of Other Actions, requires a certification by the filing party as to other proceedings to which the matter in controversy may be subject, as well as requiring the disclosure of other parties who should be joined in the action. R. 4:5-1(b)(2). The very purpose of this rule was to implement the doctrine and its underlying philosophy, as the comments to the rule reveal. R. 4:5-1(b)(2); See Pressler, Current N.J. Court Rules, Comment R. 4:5-1 (1992); Tall Timbers, supra, at 124, 524 A.2d 1315. The plain purpose of the rule is to give notice to all the parties and thereby implement the doctrine's purpose of providing all parties with a fair opportunity to present their case. The Tall Timbers court recognized the gravity of a violation of the rule, in light of the rule's purpose and intent, and remanded the matter in that case to the Superior Court to determine whether a dismissal based upon non-compliance with Rule 4:5-1 should be with or without prejudice. Tall Timbers, supra, at 124, 524 A.2d 1315.
The plaintiffs in the present case, too, failed to certify as to the pendency of the federal action. This failure is one of the bases upon which the movants rely to prevail in their motions. Plaintiffs argue, however, that Rule 4:5-1 does not include out of state cases and that in any event, violation of Rule 4:5-1 is inadvertent and a mere "technical" error which *186 should not work to bar their claims from substantive consideration. Since the doctrine has never been extended to include out of state claims, plaintiffs' first response may have merit. Their violations of the Rule's requirements, however, was neither inadvertent nor a mere "technical" error. Plaintiffs knew of the existence of the federal action when it filed in New Jersey. As to the rule being a mere "technical" requirement, such as those governing jurisdiction or discovery, this court is satisfied that its previous observations placing Rule 4:5-1 squarely within the four corners of the doctrine adequately addresses that assertion. The court does not need to address, therefore, the question of whether a violation of Rule 4:5-1 results in a dismissal with prejudice. That issue is resolved upon other grounds hereafter discussed.
Both parties also cite Blazer Corp. v. N.J. Sports and Exposition Auth., 199 N.J. Super. 107, 488 A.2d 1025 (App.Div. 1985). Blazer is only partially applicable to the case at bar. The court in Blazer addressed the applicability of the doctrine to state law claims which could have been brought as pendant claims in a prior federal action. Recognizing the compelling rationale underlying the doctrine, Id. at 111, 488 A.2d 1025, the court held that such claims must be asserted as pendant claims or be barred from later state court adjudication. Id. at 112, 488 A.2d 1025. If, however, the federal court refuses to assert jurisdiction, the state law claims are not so barred, for the purposes of the doctrine have been served. Id. at 112-113, 488 A.2d 1025. Blazer did not address the question of parties. As this court has heretofore observed, however, as concerns claim and party preclusion, what is good for the goose is good for the gander. The twin evolution of the joinder rules and commonality of purpose permit no other view.
Finally, the parties also discuss the case of Giudice v. Drew Chemical Corp., 210 N.J. Super. 32, 509 A.2d 200 (App.Div. 1986). The facts of Giudice closely parallel those of the instant case. In that matter, plaintiff purposely withheld from a New York filing claims that were later the subject of a New Jersey *187 action. The Giudice court barred those claims under the doctrine, noting that plaintiff, "who was in control of his litigation", should suffer the preclusionary consequences of his decision. Id. at 42, 509 A.2d 200. The plaintiffs in the present case, like that in Giudice, sought to make the federal action "one inning of the whole ballgame." Id. at 41, 509 A.2d 200. As previously noted, the plaintiffs were well aware of the New Jersey defendants and the corresponding causes of action against them when the plaintiffs amended their federal complaint to exclude references to the New Jersey parties ten months before filing in this state.
When the Cogdell Court rendered its decision, it was undoubtedly aware of the Blazer and Giudice decisions. The Court's focus on the issue before it and its failure to mention these holdings do not rob the above decisions of their inherent logic or consistency with the doctrine's principles. Plaintiffs, however, while not specifically denying this concept, direct the court's attention to post Cogdell decisions to support their contention that New Jersey jurisprudence should not expand the doctrine beyond its current boundaries.
In Kimmins Abatement v. Conestoga-Rovers, 253 N.J. Super. 162, 601 A.2d 256 (1991), the plaintiff omitted a party from a filing in Colorado and then later proceeded against it in New Jersey. The Kimmins court specifically declined to extend the doctrine to bar a second suit in New Jersey against a defendant who was a non-party in a prior suit in another state. Id. at 167, 601 A.2d 256. In deciding that the Supreme Court would be "disinclined to extend the doctrine that far", the court took specific notice of several problems, not the least of which was the possible inability of the Colorado court to assert in-personam jurisdiction over the omitted party. Id. at 167, 601 A.2d 256.
Plaintiffs also cite Watkins v. Resort International, 124 N.J. 398, 591 A.2d 592 (1991), which they assert overturns the holding in Blazer. This, the court believes, is a mischaracterization *188 of the Watkins holding, which in any event does not apply to the facts of this case. The questions faced in Watkins were whether the federal law of claims preclusion, instead of the entire controversy doctrine, should have been the basis of the Blazer decision, and what constitutes a resolution of pendant claims sufficient to represent a later bar to their assertion in state court. The Watkins Court discussed the various devices, both procedural and substantive, with which the federal court could have resolved the pendant claims, and concluded that a dismissal for lack of standing was meritorious while a dismissal for insufficient process was not. Id. at 423-424, 591 A.2d 592. In essence, the Watkins decision affirmed the principle that the doctrine was broader in its effect than corresponding federal laws, but it did not indict that part of the Blazer holding which found that the doctrine could affect a bar against prior claims even if the prior case was in federal court.

B.
None of the cases discussed above address squarely the facts of this case. The court is today faced, then, with one of those "case by case" resolutions that the Court alluded to in Cogdell:
We add that the contours of this rule are not fixed precisely by this decision. Its contents and bounds can evolve with experience in the course of the exercise of this Court's regulatory authority over practice and procedure, either through formal rule-making or by case-by-case adjudications.
Cogdell v. Hospital Center at Orange, 116 N.J. 7 at 28, 560 A.2d 1169 (1989).
The court does not approach its holding today heedless of this cautionary posture. In fashioning a ruling on the facts of this case, the court is aware that
[the] limits [of the doctrine] are reached when the joinder would result in significant unfairness or jeopardy to a clear presentation of the issue and just result. Implicit in the development of the entire controversy doctrine is the recognition that economies and the efficient administration of justice should not be achieved at the expense of these paramount concerns. The entire controversy doctrine does not demand monolithic adjudications. Any possible unfairness *189 to litigants, confusion in the presentation of issues, administrative unmanageability, or distortion in the truth-determining process that may result from compulsory joinder of parties  or claims  can be eliminated or at least minimized by a trial court possessed of the discretion to excuse joinder or to order severance.
Id. at 28, 560 A.2d 1169 (quoting Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 476 A.2d 250 (1984)).
The court is also cognizant, however, that neither the concerns in the above admonition nor the problems addressed in Kimmins are implicated by this case. All of the parties proceeded against in New Jersey were amenable to in personam jurisdiction by the Pennsylvania federal court, either by virtue of their domiciles in that state or their business contacts with it. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Nor would there have been, the court is confident, any confusion on the part of the federal jury with the inclusion of the extra seven defendants. The acts of the New Jersey defendants complained of by plaintiffs are no more complex or different than the acts of the similarly situated federal defendants. In fact, as the court has earlier observed, the issues, facts, causes of action and transactions in both cases were virtually identical. This truth thus alleviates too, the concerns of administrative unmanageability, unfairness to any parties or distortion of the truth-seeking process. All of the above concerns are certainly valid; they flow, in fact, from the rights guaranteed under both the federal and State Constitutions. They are simply not enmeshed in the facts of the case at bar.
In contrast, while the concerns of Cogdell and Kimmins are not applicable here, the reasons for the doctrine are. Having been excluded from the federal action by virtue of plaintiffs' acts, movants may well find themselves prejudiced in the federal case. Since they are not parties to the federal case, they may not present evidence on their own behalf to counter allegations of negligence or fraud made against them in the course of another party's evidentiary presentations, and thus may have to bear the burden of adjudications of their acts more *190 harsh than those that could have resulted with their participation. Additionally, the causes of action and facts in this case are not overly complex, but the trial of the issues would take, this court believes, a substantial amount of time and judicial resources  resources that would have been saved had the plaintiffs not excluded movants from the federal case.
In light of the above analysis and faced with the facts of this case, the court is satisfied that a fusion of the sound reasoning in Cogdell and Giudice is appropriate in this matter. The court thus elects to extend the doctrine to cover cases such as the one at bar. The court notes, however, that pursuant to Cogdell's admonition to tread lightly in this area, the court's holding today extends the doctrine only far enough to cover the instant facts.

C.
The court therefore holds that the entire controversy doctrine operates to bar suits against parties which could and should have been joined in a previous suit despite the fact that the earlier suit was brought in another state or in federal court. This holding is limited to cases such as this where the plaintiffs purposefully bifurcated the litigation and there are no questions of in personam jurisdiction respecting the omitted parties. This holding is compelled by the twin evolutions and purposes of the party and claim joinder rules and the extension of claims joinder to cover other forums. The court is confident that this union of the Cogdell and Giudice holdings is fair to the parties of this and similar cases and will prevent prejudice to the omitted parties and the wasteful manipulations of the New Jersey courts such as occurred here.
In accordance with the above discussed case law and Rule 4:30A, the motions to dismiss are hereby granted and the cases against movants dismissed in their entirety, with prejudice.[4] *191 This holding, however, applies only to the reinstitution of the cases against the movants in New Jersey. It does not, and cannot, proscribe the activities of other courts in other forums. The integrity of the bar applied herein must be trusted to the Full Faith and Credit clause of the Constitution if it is to stand elsewhere.[5]
NOTES
[1] F.R.Civ.P. 22 provides in part that applications for leave to join additional parties after the expiration of time in F.R.Civ.P. 14 will ordinarily be denied as untimely unless filed not more than 90 days after service of the moving party's answer. F.R.Civ.P. 22(a).
[2] Movants have also requested, in the alternative, for summary judgment dismissing the RICO claims for defectiveness in the pleadings and on the basis that no facts exist to support those claims by plaintiff. The court will not reach the merits of those requests in this opinion.
[3] The Law Division and the Chancery Division shall each exercise the powers and functions of the other division when the ends of justice so require ... so that all matters in controversy between the parties may be completely determined. N.J. Const. (1947), Art. VI, s. III, par. 4.
[4] The court specifies that the dismissals shall be with prejudice based in part upon Rule 4:37-2(a) for failure to obey Court Rule 4:30A, as well as upon the more substantive grounds discussed in the opinion.
[5] Shortly after the rulings upon the instant motions, plaintiffs moved the court to clarify that the orders memorializing this court's holdings were without prejudice. As specified above, the court's decision is in fact to dismiss the complaints with prejudice, to effectuate the philosophy of the doctrine. Also as noted above, however, the court is without jurisdiction to influence the decision-making process of other courts outside of New Jersey. The court thus holds that the prejudicial effect of today's determinations may extend beyond New Jersey only when a non-New Jersey court so construes Article IV, Section 1 of the United States Constitution which states in part: "Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State." U.S. Const., Art. IV, s. I.