Gerald ITZKOFF, an Individual Partnership d/b/a Gerald Itzkoff, Plaintiff,

v.

F & G REALTY OF NEW JERSEY, CORP., a Corporation of the State of New Jersey d/b/a Foremost Cold Storage, and Foremost Cold Storage, Inc., a Corporation of the State of New Jersey, Defendants.

Civ. No. 93–526 (WGB).

United States District Court, D. New Jersey.

June 30, 1995.

352

Waldman, Renda & McKinney by Thomas A. McKinney, Hawthorne, NJ, for defendant Foremost Cold Storage, Inc.

Matarazzo Blumberg & Associates by Barbara A. Matarazzo, New York City, Zigman & Kornfeld, Fort Lee, NJ, for plaintiff.

## OPINION

BASSLER, District Judge:

Defendant Foremost Cold Storage, Inc. ("Foremost") has moved under Federal Rule of Civil Procedure 56 for summary judgment dismissing the complaint of plaintiff Gerald Itzkoff, an individual partnership doing business as Gerald Itzkoff ("Itzkoff"), pursuant to New Jersey's entire controversy doctrine. For the reasons set forth below, the Court will grant Foremost's motion and dismiss plaintiff's complaint.

## I. BACKGROUND

Plaintiff Gerald Itzkoff is an individual conducting business as a fur trader in the fur district of New York, New York. In that capacity, plaintiff sometimes utilized the storage facilities of defendant Foremost to store furs until they were sold.

From 1987 through 1992, plaintiff stored furs at Foremost's storage facility located at 220 Ellison Street, Paterson, New Jersey. At some point while plaintiff's furs were being stored at defendant's facility, some furs were allegedly damaged by contamination or pickle brine. Plaintiff was notified of the damage to its furs on or about May 15, 1992.

When notified of the damage to the furs, plaintiff contacted its insurance broker, Elliot Wexelman ("Wexelman"), and Wexelman's employer, Lustig Brokerage Co., Inc. ("Lustig"). Wexelman informed Itzkoff that Itzkoff's policy did not cover any goods located at the Foremost facility in Paterson.

In July of 1992, plaintiff commenced an action in the Supreme Court of the State of New York ("the New York action"), and plaintiff filed an amended complaint in August of 1992. *See* Amended Complaint, McKinney Cert., Exh. A. Plaintiff named Wexelman and Lustig as defendants, as well as ASE Corporation ("ASE") (collectively, "the insurance defendants"). ASE was a corporation for whom Wexelman had worked at the time he placed the relevant insurance for Itzkoff. The essence of plaintiff's allegations in the New York action was that the insurance defendants had failed to provide insurance coverage that would indemnify plaintiff in the event that certain risks of loss occurred to its furs at various locations, including the Paterson facility. Plaintiff sought monetary damages in the amount of $250,000.

In January of 1993, Itzkoff instituted a separate action in this Court ("the federal action") against F & G Realty of New Jersey, Corp., d/b/a Foremost Cold Storage ("F & G"). *See* Complaint, McKinney Cert., Exh. C. Plaintiff alleged that the negligence of F & G caused damage to the furs that had been stored at the Paterson facility.

In March of 1993, Wexelman and Lustig instituted a third-party suit in the New York action against (i) Foremost Cold Storage, Inc. (the movant herein), (ii) Foremost Cold Storage of New York, Inc. (an entity that had nothing to do with the New Jersey entity that owned and operated the storage facility), and (iii) F & G (an entity that in 1991 had leased the Foremost facility in Paterson with an option to purchase the facility). *See* Third Party Complaint, McKinney Cert., Exh. B. The insurance defendants alleged that the third-party defendants' negligence caused the damage to the furs. Itzkoff never amended its complaint to assert a direct claim against any of the third-party defendants.

In May of 1993, Foremost filed a verified answer to the third-party complaint. *See* Matarazzo Aff., Exh. A. Foremost's answer included several affirmative defenses, including the alleged lack of jurisdiction over the person of third-party defendant Foremost as a result of alleged improper and ineffective service of the third-party complaint. F & G did not appear in the New York action and defaulted.

In November of 1993, this Court issued a notice of call for dismissal of plaintiff's federal court action based upon plaintiff's failure to effect service of the summons and complaint upon F & G within 120 days of the filing of the complaint. *See* Fed.R.Civ.P. 4(m). F & G was never served with the summons and complaint, but in February of 1994, plaintiff filed an amended complaint naming Foremost—the movant herein and already a third-party defendant in the New York action—as a defendant. *See* McKinney Cert., Exh. D. Foremost answered the complaint in March of 1994.

The New York action was tried before a jury in July and August of 1994. Itzkoff claimed that Wexelman and Lustig were negligent toward and breached their contract with Itzkoff on January 3, 1992, the date of the inception of the contract of insurance which allegedly should have provided coverage for the Foremost facility in Paterson. The third-party action of Wexelman and Lustig against Foremost was also presented to the jury as a matter joined but not consolidated for trial. The third-party plaintiffs argued that if they were liable to plaintiff for not obtaining the proper insurance coverage, then Foremost was liable to them as the party that caused the damage to the furs. Foremost put forth a defense theory to the jury that the damage to the furs occurred while the furs were under the watch of F & G in 1991, when F & G was allegedly running the warehouse.

The judge who presided over the New York jury trial asked the jury to determine what percentage of the negligence of the insurance defendants, if any, was attributable to Foremost. On August 11, 1994, the jury returned a verdict which found (i) that Wexelman was liable to plaintiff, (ii) that Foremost failed to exercise reasonable care for the safety of plaintiff's furs, and (iii) that Foremost was liable to Wexelman for 67.7% of the $177,000 Wexelman was found to owe to Itzkoff.

Foremost next filed this motion for summary judgment. Foremost argues that Itzkoff's complaint against it must be dismissed pursuant to New Jersey's entire controversy doctrine. For the reasons set forth below, the Court agrees and will dismiss plaintiff's complaint.

## II. DISCUSSION

### A. Summary Judgment Standard

The standard for granting summary judgment pursuant to Federal Rule of Civil Procedure 56 is a stringent one. Summary judgment is appropriate only if all the probative materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). In determining whether there remain any genuine issues of material fact, the court must resolve all reasonable doubts in favor of the nonmoving party. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983); *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972). Significantly, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Under the standards announced by the Supreme Court's trilogy in *Celotex Corp v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."

*Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original). Indeed, where the moving party has made a properly supported motion for summary judgment, it is incumbent upon the nonmoving party to come forward with specific facts to show that there is a genuine issue of material fact for trial. *Id.* at 248, 106 S.Ct. at 2510. Thus, once the moving party has carried its burden of establishing the absence of genuine issues of material fact, the nonmoving party "may not rest upon mere allegations or denials" of its pleadings, Fed.R.Civ.P. 56(e), but must produce sufficient evidence that will reasonably support a jury verdict in its favor, *id.* at 249, 106 S.Ct. at 2510; *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring), and not just "some metaphysical doubt as to material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356.

Moreover, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511. "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litigation,* 916 F.2d 829, 860 (3d Cir.1990).

B. *Entire Controversy Doctrine*

1. *General Principles*

■ "The New Jersey entire controversy doctrine is a particularly strict application of the rule against splitting a cause of action." *Bennun v. Rutgers State University,* 941 F.2d 154, 163 (3d Cir.1991). The doctrine precludes a plaintiff from litigating claims that were or could have been litigated in a prior proceeding and further bars claims against parties who should and could have been named in the prior action but were not. *Cogdell v. Hospital Center at Orange,* 116 N.J. 7, 25–26, 560 A.2d 1169 (1989).

■ Following the Supreme Court's decision in *Cogdell,* the entire controversy doc-

trine was codified at New Jersey Court Rule 4:30A, which provides as follows:

Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine.

N.J.Ct.R. 4:30A. "The point of the doctrine is that 'a component of a controversy may not be unfairly withheld, and a withholding is by definition unfair if its effect is to render the pending litigation merely one inning of the whole ballgame.'" *Electro–Miniatures Corp. v. Wendon Co., Inc.,* 889 F.2d 41, 45 (3d Cir.1989) (quoting *William Blanchard Co. v. Beach Concrete Co., Inc.,* 150 N.J.Super. 277, 294, 375 A.2d 675 (App.Div.1977) ("*Blanchard*")). The entire controversy doctrine may preclude an action against one who was not, but could have been, a party to the earlier action, *Cogdell,* 116 N.J. at 26, 560 A.2d 1169, but "the party whose claim is being sought to be barred must have had a fair and reasonable opportunity to have fully litigated that claim in the original action." *Cafferata v. Peyser,* 251 N.J.Super. 256, 261, 597 A.2d 1101 (App.Div.1991) (citations omitted).

Subject matter jurisdiction in this action is based upon diversity of citizenship under 28 U.S.C. § 1332. The parties agree that New Jersey law applies in this diversity action. The parties further assume, as will the Court, that New Jersey's entire controversy doctrine—and not the less stringent doctrines of claim and issue preclusion—govern this action. *See Kozyra v. Allen,* 973 F.2d 1110 (3d Cir.1992); *Melikian v. Corradetti,* 791 F.2d 274 (3d Cir.1986).

2. *Prior out-of-state Proceedings*

In *Cogdell,* the Supreme Court explicitly recognized that the contours of the entire controversy doctrine "are not fixed precisely by this decision. Its contents and bounds can evolve with experience ... either through formal rulemaking or case-by-case adjudications." *Cogdell,* 116 N.J. at 28, 560 A.2d 1169.

Here, plaintiff's principal argument against the application of the entire controversy doctrine is that the doctrine can never apply

where the first proceeding took place outside of New Jersey. There is some support for plaintiff's position, *see Kimmins Abatement Corp. v. Conestoga–Rovers & Assoc., Inc.,* 253 N.J.Super. 162, 601 A.2d 256 (Law Div. 1991) *("Kimmins"),* although other courts have rejected such a per se rule and have not hesitated to apply the doctrine where fairness so required. *See Giudice v. Drew Chemical Corp.,* 210 N.J.Super. 32, 509 A.2d 200 (App.Div.1986) *("Giudice"); Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co.,* 262 N.J.Super. 178, 620 A.2d 456 (Law Div.1992), *aff'd,* 275 N.J.Super. 79, 645 A.2d 787 (App.Div.1994), *certif. granted,* 138 N.J. 270, 649 A.2d 1290 (1994) *("Mortgagelinq"); see also Research & Trading Corp. v. Safety Technology Systems, Inc.,* 1994 WL 114553 (D.N.J. March 29, 1994) (JEI). Neither the New Jersey Supreme Court nor the Third Circuit has squarely addressed the issue.

 This motion thus presents what the *Cogdell* Court referred to as one of the evolving applications of the entire controversy doctrine that must be decided on a case-by-case basis, the issue here being whether plaintiff's claims against Foremost are barred by plaintiff's failure to sue Foremost directly in the New York action. The Court's task on this motion is to predict how the New Jersey Supreme Court would decide this issue. *McKenna v. Pacific Rail Service,* 32 F.3d 820, 825 (3d Cir.1994); *Packard v. Provident Nat. Bank,* 994 F.2d 1039, 1046–47 (3d Cir.1993); *Borse v. Piece Goods Shop, Inc.,* 963 F.2d 611, 613–14 (3d Cir.1992). In so doing, the Court is to give proper regard to the decisions of state intermediate appellate courts, which are presumptive evidence of state law, *id.* (citations omitted); *see also United States v. Board of Educ. of Tp. of Piscataway,* 798 F.Supp. 1093, 1095 (D.N.J. 1992) (citations omitted); and the Court is of course bound by any Third Circuit decisions regarding how the New Jersey Supreme Court would rule. *Largoza v. General Elec. Co.,* 538 F.Supp. 1164, 1166 (E.D.Pa.1982) (citations omitted). Before turning to the facts of this case, the court will review several authorities that are germane to this issue.

#### a. Relevant Caselaw

In *Giudice,* the plaintiff withheld from a New York action a wrongful discharge claim that was later filed in New Jersey against a defendant from the New York action. In dismissing the New Jersey action, the appellate division stated as follows:

> Based upon our study of the record, we are completely satisfied that Giudice's election to hold back from the New York litigation the claim of wrongful discharge must bar him from thereafter raising it in a subsequent proceeding. The defamation and wrongful discharge actions are closely related and are constituent components of the entire controversy. Additionally, the fact that New York might not recognize *Woolley* [*v. Hoffmann–LaRoche, Inc.,* 99 N.J. 284, 491 A.2d 1257 (1985)] and *Pierce* [*v. Ortho Pharmaceutical Corp.,* 84 N.J. 58, 417 A.2d 505 (1980)] types of wrongful discharge causes of action does not preclude the requirement that the entire controversy be determined in a single action which saves time and expense. When Giudice filed the New York action he contemplated that before or after final judgment in New York, separate litigation would be filed in New Jersey "in order to conclusively dispose of their respective bundles of rights and liabilities which derive from a single transaction or related series of transactions;" consequently, "the omitted component must be regarded as constituting an element of the minimum mandatory unit of litigation." Therefore, we hold that Giudice who was in control of his litigation must suffer the preclusionary consequences of the entire controversy doctrine. That result must obtain notwithstanding the fact that the first litigation was instituted in New York rather than in New Jersey.

*Giudice,* 210 N.J.Super. at 41–42, 509 A.2d 200 (citations omitted).

In *Kimmins,* relied upon heavily by Itzkoff, the first suit was filed in Colorado, and plaintiff subsequently sued a non-party to the Colorado action in New Jersey. The *Kimmins* court rejected application of the entire controversy doctrine, distinguishing *Giudice* as follows:

While the entire controversy doctrine is extremely broad neither our Supreme Court nor the Appellate Division has ever extended the doctrine to bar a second lawsuit against a defendant who was not a party to the first lawsuit in another State.... In ... *Giudice* the same parties were involved in both the first and second lawsuits. Any suggestion that the entire controversy doctrine should apply to require litigators in other jurisdictions to join all potentially responsible parties in a first lawsuit or face preclusion in a second lawsuit in our New Jersey courts has already been rejected by the Third Circuit Court of Appeals in *Electro–Miniatures*.... [E]xpansion of the entire controversy doctrine to circumstances such as these would create many complexities both in the courts of other states and this state. Here, for example, it would have required the Colorado court to decide whether it had in personam jurisdiction over CRA and perhaps whether the doctrine of forum non conveniens was applicable. I conclude that our Supreme Court would be disinclined to extend the doctrine that far.

*Kimmins,* 253 N.J.Super. at 166–67, 601 A.2d 256 (citations omitted) (footnote omitted).

In *Electro–Miniatures,* relied upon by the court in *Kimmins,* the Third Circuit discussed the propriety of applying New Jersey's entire controversy doctrine to determine the preclusive effect in New Jersey of a prior out-of-state judgment. The Court recognized, citing *Giudice,* that there was support for applying the doctrine to out-of-state judgments, but "note[d] that the adoption of such an across-the-board rule might have unintended and untoward consequences.[6] However, ... we need not reach this issue." 889 F.2d at 45. In footnote six, the Court "note[d] at least the theoretical possibility that such a holding might compel careful litigators in other jurisdictions to raise all related claims and issues and seek all available remedies in a single proceeding, because of the possibility that a subsequent claim might arise in New Jersey." *Id.* at 45 n. 6.

In *Mortgagelinq,* plaintiffs filed an initial suit in the Eastern District of Pennsylvania and then sued additional defendants, in an action arising out of the same controversy, in the New Jersey Superior Court. The court noted *Cogdell*'s admonition that the doctrine should not bar a second suit where joinder would result in significant unfairness, as well as the *Kimmins* court's decision that the doctrine should not apply where the out-of-state court may not possess in personam jurisdiction over the omitted party. 262 N.J.Super. at 187–89, 620 A.2d 456. The court found that these concerns were not present, however, and held that "the entire controversy doctrine operates to bar suits against parties which could and should have been joined in a previous suit despite the fact that the earlier suit was brought in another state or in federal court. This holding is limited to cases such as this where the plaintiffs purposefully bifurcated the litigation and there are no questions of in personam jurisdiction respecting the omitted parties." *Id.* at 190, 620 A.2d 456; *see also Gross v. Cohen Dufour & Assoc.,* 273 N.J.Super. 617, 622, 642 A.2d 1074 (Law Div.1993) (applying *Mortgagelinq* and stating that the decision "appears to be consistent with New Jersey case law and the evolving application of the entire controversy doctrine").

On appeal, the appellate division, in a per curiam opinion, affirmed "essentially for the reasons expressed by" the trial judge. 275 N.J.Super. at 81, 645 A.2d 787. In so doing, the court stated as follows:

Even though the result here extends the preclusive effect of the Entire Controversy Doctrine for failure to join a non-party to a judgment of a jurisdiction which apparently does not employ the doctrine for such failures, plaintiffs' choice and successful efforts to keep defendants out of the prior case, which entailed claims germane to these defendants, dictate against providing them with a New Jersey forum to litigate their claims....

... Plaintiffs, principally Mortgageling, elected to proceed in a bifurcated manner while totally aware of claims against the defendants in this case. The prior forum was the opportune forum for these defendants. Under the circumstances and given our strong policy against such a selective litigating process, we conclude plaintiffs

should be denied access to New Jersey courts as a forum to litigate claims they knew of and chose not to pursue in the prior litigation.

275 N.J.Super. at 81–82, 645 A.2d 787 (citations omitted).

Finally, the Court notes the decision of Judge Irenas in *Research & Trading Corp. v. Safety Technology Systems, Inc.,* 1994 WL 114553 (D.N.J. March 29, 1994) (JEI) ("*R & TC*"), a case quite similar to this one. In *R & TC,* the defendant had not been joined in a previous and substantially similar state court litigation brought by the plaintiff in Delaware. In response to defendant's motion based upon the entire controversy doctrine, plaintiff argued that the defendant was not subject to the in personam jurisdiction of the Delaware court. Judge Irenas, citing *Kimmins,* recognized that it would indeed be inequitable to apply the doctrine for failure to join a party not subject to the court's jurisdiction. *Id.* at *3. Judge Irenas found, however, that the defendant could in fact have been joined under the Delaware long-arm statute. *Id.* at *3–4.

Plaintiff argued alternatively, citing *Kimmins,* that even if it could have joined the defendant in the Delaware action, such joinder should not be required in that the entire controversy doctrine has no application where the first lawsuit arose in a state other than New Jersey and there existed jurisdictional questions as to the propriety of joining the absent party. In rejecting plaintiff's argument, Judge Irenas explained as follows:

> *Kimmins* was quickly distinguished in *Mortgagelinq* where the court found it inapposite if a defendant in the later New Jersey suit was subject to the jurisdiction of the first court. *Mortgagelinq* also relied on the New Jersey Appellate Division decision in *Giudice* in which the entire controversy doctrine was applied to bar a wrongful discharge claim because of the failure to assert that claim in a prior New York defamation action.

> The *Mortgagelinq* court, like the Third Circuit in *Wendon,* was aware of the possible unfairness of imposing a blanket rule applying the entire controversy doctrine

where the first suit is in a foreign jurisdiction. . . .

> In this case nothing suggests that the court should exercise its discretion and decline to apply the entire controversy doctrine. . . . Plaintiff was always aware that [defendant] was a New Jersey corporation which would be sued in New Jersey (if not in Delaware). Thus, *Wendon*'s concern that a litigant in another state might be prejudiced by the mere "possibility that a subsequent claim might arise in New Jersey" is absent in this case.

*Id.* at *5 (citations omitted).

■ Based upon the above authorities, the Court draws the following conclusions. When a plaintiff files an out-of-state action and contemplates that before or after final judgment in that action a separate litigation will be filed in New Jersey "in order to conclusively dispose of the respective bundles of rights and liabilities which derive from a single transaction or related series of transactions," then "the omitted component must be regarded as constituting an element of the minimum mandatory unit of litigation." *See Blanchard,* 150 N.J.Super. at 294, 375 A.2d 675. Such a plaintiff—who is presumably in control of his litigation—must generally suffer the preclusionary consequences of the entire controversy doctrine. This result must obtain notwithstanding the fact that the first litigation was instituted in a jurisdiction other than New Jersey.

■ An across-the-board rule that applied the doctrine to bar a second lawsuit against a defendant who was not a party to the first lawsuit in another State could indeed have unintended and untoward consequences, however, particularly where there are serious questions regarding in personam jurisdiction over the omitted party. A court should therefore not apply the doctrine where joinder would result in significant unfairness or where the foreign jurisdiction may not possess in personam jurisdiction over the omitted party.

■ On the other hand, a per se ban against application of the doctrine any time the moving party was omitted from the prior out-of-state suit—as requested by plaintiff

here—would allow plaintiffs to avoid the doctrine in a way that might often be unfair to defendants. As the *Mortgagelinq* court found, the entire controversy doctrine should operate to bar suits against parties which could and should have been joined in a previous suit, despite the fact that the earlier suit was brought in another state or in federal court. Plaintiffs can be protected from unfairness by limiting the application of the doctrine to cases where the plaintiff chooses to bifurcate the litigation and where there are no genuine questions of in personam jurisdiction respecting the omitted parties. Thus, whether the entire controversy doctrine should bar a suit against a party—such as Foremost—who was not sued directly in a prior out-of-state litigation will depend upon the facts of the particular case.

### b. *Application to this Case*

 Applying the principles discussed above to this case, the Court concludes that Itzkoff's complaint against Foremost must be dismissed under the entire controversy doctrine. Itzkoff clearly had the opportunity to assert a direct claim against Foremost in the New York action, in which Foremost was already a third-party defendant. *See, e.g.,* N.Y.Civ.Prac.L. & R. 1009 (McKinney 1995) ("Within twenty days after service of the answer to the third-party complaint upon plaintiff's attorney, the plaintiff may amend his complaint without leave of court to assert against the third-party defendant any claim plaintiff has against the third-party defendant."). Both Itzkoff and Foremost were parties to the New York action that was joined for trial in July and August of 1994. Foremost fully participated in the trial in New York and submitted itself to the court's jurisdiction. If Itzkoff wanted to sue Foremost directly, Foremost could and should have been joined in the New York action in a direct suit by Itzkoff. Significantly, when Itzkoff amended its complaint in this action in February of 1994 to add Foremost as a defendant, Foremost had already been a third-party defendant in the New York action for almost one year.

Plaintiff nonetheless asserts that the reason it did not file a direct action against Foremost in New York was because

there never was jurisdiction over Foremost Cold Storage in the New York action. This is borne out by the first affirmative defense in the Foremost answer. Foremost Cold Storage Inc. had never come to New York to enter into a contract with plaintiff and did not have any residence or place of business in New York state, and the proper jurisdiction within which to commence suit against Foremost Cold Storage Inc. is the New Jersey courts.

Matarazzo Aff., ¶ 17, at 7–8. In fact, however, Foremost's first affirmative defense had nothing to do with New York contracts, residences, places of business, or long-arm jurisdiction over Foremost whatsoever; rather, it alleged that "[t]he court lacks jurisdiction over the persons of the Third–Party Defendant FOREMOST because of improper and ineffective service of the Third–Party Complaint." *See* Matarazzo Aff., Exh. A, at 2. Despite plaintiff's unsupported (and misleading) protestations to the contrary, Foremost never raised any defense based upon an alleged lack of long-arm jurisdiction, and in fact submitted to the court's jurisdiction. Plaintiff's argument on this ground therefore fails.

Plaintiff's second and final explanation as to why it did not sue Foremost directly is that it "did not want to confuse the jury and the presentation of issues in the New York action." *See, e.g.,* Matarazzo Aff., ¶ 18, at 8. This argument also lacks merit. As the Third Circuit recently explained, "the entire controversy doctrine does not require that all claims and parties proceed to culmination in one litigation. Rather, all claims and parties must initially be joined together before one court. The Court can determine for itself how best to proceed with the various claims and parties. In order to exercise this discretion, however, the court must be fully informed of the extent of the controversy before it." *Petrocelli v. Daniel Woodhead Co.,* 993 F.2d 27, 31 (3d Cir.1993). The Court concluded that under the entire controversy doctrine, "courts and not private parties have the authority to decide whether equitable

360

considerations justify separate trials." *Id.; see also Cogdell,* 116 N.J. at 28, 560 A.2d 1169 (confusion can be eliminated or minimized by trial court in its discretion). Plaintiff's second explanation is thus also unpersuasive.

In this case, then, plaintiff has failed to provide any reason why the Court should exercise its discretion and decline to apply the entire controversy doctrine. The Court finds that there were no genuine questions regarding plaintiff's ability to secure in personam jurisdiction over Foremost in the New York action, and that no other significant unfairness will result from application of the entire controversy doctrine to the facts of this case. Under the decisions of the appellate division in *Giudice* and *Mortgageling* in particular, the Court predicts that the New Jersey Supreme Court would require dismissal of plaintiff's complaint pursuant to the entire controversy doctrine.

### III. CONCLUSION

For the reasons set forth above, the Court concludes that the entire controversy doctrine requires dismissal of plaintiff's complaint. The Court will therefore grant Foremost's motion and dismiss plaintiff's complaint with prejudice.